IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| WILLIAM A. FISH, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | 12 C 1856 |
| JOSEPH J. HENNESSY, | ) | |
| Defendant, | ) | Judge Virginia M. Kendall |
| | ) | |
| | ) | |
| JOSEPH J. HENNESSY, | ) | |
| Third-party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| MIDWEST OPPORTUNITY FUND, LLC, | ) | |
| Third-party Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

On June 13, 2012, Magistrate Judge Nan R. Nolan held a hearing on Defendant Joseph J. Hennessy's Motion to Disqualify Counsel of Plaintiff William A. Fish. The Magistrate Judge denied the Motion and refused to disqualify Fish's counsel from continuing to represent him in this matter. Before the Court are two pending motions. Hennessy has filed objections to the Magistrate Judge's Order denying his Motion to Disqualify, and Fish has filed a Motion to Strike Defendant's Objections to Magistrate

1

Judge Nan R. Nolan's Order of June 13, 2012 on the grounds that Hennessy's objections are untimely under Federal Rule of Civil Procedure 72(b)(2).

## I. Background

The underlying dispute that gives rise to Hennessy's Motion to Disqualify originates from a judgment rendered in the Southern District of Ohio in favor of Fish against Hennessy. *See Fish v. Hennessy*, No. 1:10-cv-380 (S.D. Ohio February 9, 2012). Hennessy in turn received a judgment against Midwest Opportunity Fund (hereafter "MOF"). Hennessy guaranteed a loan from Fish to MOF, and MOF is a third-party Defendant here. The case before this Court is for registration of judgment for enforcement in another district pursuant to 28 U.S.C. § 1963. At the time of the Ohio judgment, the Dykema law firm represented Hennessy with regards to a pending SEC investigation. On February 14, 2012, Dykema ceased its representation of Hennessy and on March 14, 2012, it started representing Fish in the present suit to enforce the Ohio judgment against Hennessy. At no time during the pendency of the Ohio suit did Dykema represent either party with respect to that suit. Hennessy brought this Motion to Disqualify, arguing that Dykema's former representation of him precludes it from now representing a materially adverse party against him under the Illinois Rules of Professional Conduct. The Magistrate Judge received briefs from the parties on this issue and heard oral argument concerning the same. On June 13, 2012 she rendered an Order on the record, holding that Dykema was not

disqualified from representing Fish against Hennessy in the present matter, thereby denying Hennessy's Motion to Disqualify. Hennessy appeals to this Court, arguing that the Magistrate Judges's Order was clearly erroneous or contrary to law.

This Court is empowered to refer to a magistrate judge certain nondispositive pretrial matters pending before the Court, including motions to disqualify an attorney. *See* 28 U.S.C. § 636(b)(1)(A) ("a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court"); Fed. R. Civ. P. 72(a) (setting forth the procedure by which a magistrate judge hears nondispositive matters); *see, e.g., Doe v. Catholic Archdiocese of Chicago*, No. 09 C 7656, 2010 WL 2293460, *1 (N.D. Ill. June 8, 2010) (a motion to disqualify an attorney falls within the scope of a referral of all nondispositive pretrial motions to a magistrate judge); *Ramos v. Pabey*, No. 2:05-CV-189, 2005 WL 3556553, *4 (N.D. Ind. Dec. 27, 2005) (a motion to disqualify an attorney is a nondispositive pretrial matter). The magistrate judge may issue orders for the resolution of nondispositive pretrial matters, such as motions to disqualify an attorney. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a) ("When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision."); *see, e.g., Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, No. 00 C 5658, 2002 WL 1433584, *2 (N.D. Ill. July 2, 2002) (a magistrate judge may issue orders to dispose

of nondispositive pretrial motions).

**II. Motion to Strike**

Fish moves to strike Hennessy's objection to the Magistrate Judge's Order on the grounds that it is untimely. Objections to a magistrate judge's nondispositive pretrial matters must be presented to the presiding district court within fourteen days of the date on which the objecting party receives notice of the order. *See* 28 U.S.C. § 636(b)(1) ("Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."); Fed. R. Civ. P. 72(a) (a party has fourteen days from the time it is served with a copy of the magistrate judge's order in which to file objections to that order with the district court). The Order in this case was docketed and served on the parties on June 13, 2012. Hennessy filed his objections to the Magistrate Judge's Order on July 5, 2012, twenty-three days after receiving notice of the Order. Therefore, Hennessy's objections are untimely under a strict interpretation of the statute and the Rule. Hennessy argues that his late filing should be excused because his counsel was caring for his 99-year-old mother for one week during the fourteen day period. He argues that the late filing of one week is not an egregious delay and did not prejudice Fish.

A party's failure to seek timely review does not strip this Court of its power to review a nondispositive issue decided by a magistrate judge. *See Schur v. L.A. Weight Loss*

*Centers, Inc.*, 577 F.3d 752, 761 (7th Cir. 2009) (quoting *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006)). The fourteen day deadline for filing objections to a magistrate judge's order imposed by 28 U.S.C. § 636(b)(1) is not a jurisdictional deadline. *See Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994). The statute is the counterpart to Federal Rule of Civil Procedure 72(a). *See Willis v. Caterpillar Inc.*, 199 F.3d 902, 903 (7th Cir. 1999). When a deadline in not jurisdictional in nature, the Court is not required to impose the harsh penalty of dismissal for missing it. *See Id.* In *Hunger* the plaintiffs filed their objections three weeks after the magistrate judge issued his order. *See Id.* Finding that the objections were not "egregiously late" and did not cause "even the slightest prejudice" to the adverse party, the court allowed the untimely objections. *See Id.* Hennessy's objections are not egregiously late, and Fish, in his Motion to Strike, fails to explain how a one week delay significantly prejudices him. As such, the Court finds that the objections are properly before it, and the Court will review the Magistrate Judge's Order of June 13, 2012. Fish's Motion to Strike Defendant's Objections to Magistrate Judge Nan R. Nolan's Order of June 13, 2012 is accordingly denied.

**III. Motion to Disqualify an Attorney**

A magistrate judge's order concerning nondispositive pretrial matters is reviewed by this Court under the highly deferential clearly erroneous or contrary to law standard of review. *See* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial

5

matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); Fed. R. Civ. P. 72(a) ("The district judge in the case must set aside any part of the order that is clearly erroneous or contrary to law."); *Ramos v. Pabey*, 2005 WL 3556553, at *4 (a magistrate judge's order on a motion to disqualify an attorney is reviewed only to ensure that it is not clearly erroneous nor contrary to law—a highly deferential standard of review). A decision by a magistrate judge is clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). When performing clear error review, the district court should not overturn a decision by the magistrate judge merely because the district judge would have independently come to a different conclusion from the one reached by the magistrate judge on the same set of facts. *See Id.* "Ordinarily, under clearly erroneous review, if there are two permissible views, the reviewing court should not overturn the decision solely because it would have chosen the other view." *American Motors Corp. v. Great American Surplus Lines Insurance Co.*, No. 87 C 2496, 1988 WL 2788, *1 (N.D. Ill. Jan. 8, 1988).

Hennessy moved the Magistrate Judge for an order disqualifying Dykema from representing Fish against Hennessy in the present dispute. The Magistrate Judge denied the Motion, finding that Hennessy had not met his burden of proof to establish that

6

disqualification was appropriate under Illinois Rule of Professional Conduct 1.10. That Rule states in part:

> (b) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:
>
>> (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
>>
>> (2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter

The only attorney at Dykema who represented Hennessy during Hennessy's retainer of the firm was Richard Reibman. The Magistrate Judge found that the last time Reibman provided legal services to Hennessy was in November 2011. The Judge also found that Reibman terminated his association with Dykema in January 2012. At that time Dykema sent Reibman an e-mail asking whether he wanted Dykema to continue representing him or whether he would be following Reibman to a new firm. The Judge found that Hennessy did not reply to the e-mail. On February 15, 2012, Dykema sent Hennessy a refund check for his remaining retainer business. The Magistrate Judge further found that Dykema represented neither party in the Ohio lawsuit that gave rise to the present dispute before her. The Judge also found that in mid-February 2012, Dykema began representing Fish in the instant action in this Court.

The Magistrate Judge then turned her attention to Illinois Rule of Professional Conduct 1.10(b), which she determined controlled the issue of disqualification. She stated that Hennessy, the moving party, had the burden of proof to demonstrate that Dykema's representation of Fish is a violation of the Rule. However, before turning to the language of the Rule, the Magistrate Judge determined that the retainer letter between Hennessy and Dykema did not trump the Illinois Supreme Court's Rule. Hennessy argued that the retainer letter between Dykema and himself contained an "advance waiver," which he argued provided that Dykema would have to decline to represent someone adverse to him if the firm learned of any sensitive, proprietary, or otherwise confidential information of a nonpublic nature that, if known to another client, could be used by the other client to the material disadvantage of Hennessy. The Magistrate Judge, while holding that Rule 1.10(b) trumped the language of the letter, found that the letter was beast read to mean that Hennessy was affirmatively acknowledging that Dykema could represent someone against him so long as it did not use any of the confidential information that it obtained as a result of representing Hennessy.

The Magistrate Judge then turned to Rule 1.10(b) which she described as perfectly clear and a modally drafted Rule. She held that the Rule is written in the affirmative, representing an intention on the part of the drafters that a firm can represent a client with adverse interests to a former client unless both parts of the two-part test of the Rule are

8

satisfied. The Judge could not make a determination with respect to Rule 1.10(b)(1) because on the record before her she could not determine whether the SEC investigation that Reibman represented Hennessy in connection with was the same or substantially related to the litigation in Ohio. She nevertheless held that Hennessy could not carry his burden of proof on 1.10(b)(2) because she determine that the only lawyer at Dykema that obtained confidential information about Hennessy was Reibman, and because he departed Dykema before it undertook representing Fish the firm as a whole was not imputed with the confidential information held by Reibman. The Magistrate Judge held that on the record there was no evidence that any lawyer at Dykema received any information that was protected by Rule 1.6, which is the duty of confidentiality, or Rule 1.9, which is the duty to former clients, that is material to the present suit.

Disqualification is "a drastic measure," and courts should be reluctant to impose disqualification except when "absolutely necessary." *See Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982). Disqualification of counsel, while at times necessary to protect the attorney-client relationship, also functions to destroy another relationship by depriving a party of the representation of their own choice. *See Id.* Furthermore, motions to disqualify ought to be adjudicated with extreme caution because they can be used as an abusive tactic in litigation. *See Id*; *see also Richardson-Merrell Inc. v. Koller*, 472 U.S. 424, 436 (1985). While motions to disqualify may serve an important role

in raising the standards of legal ethics and upholding the public's trust in the legal profession, they may also serve the opposite result by encouraging vexatious litigation tactics and increasing the public's cynicism over the profession. It is for these reasons that motions to disqualify are viewed with substantial disfavor and should generally be denied absent extraordinary circumstances. *See Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993); *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983); *Freeman*, 689 F.3d at 721; *see, e.g., Mercury Vapor Processing Technologies, Inc. v. Village of Riverdale*, 545 F. Supp. 2d 783, 787 (N.D. Ill. 2008); *Coburn v. DaimlerChrysler Services North America, L.L.C.*, 289 F. Supp. 2d 960, 963-964 (N.D. Ill. 2003); *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997); *Chemical Waste Management Inc. v. Sims*, 875 F. Supp. 501, 503 (N.D. Ill. 1995).

As the Magistrate Judge concluded, Illinois Rule of Professional Conduct 1.10 is written in the affirmative, explicitly approving a law firm's representation of a new client against a former client when the lawyer representing the former client departs a firm unless the party moving for disqualification can prove both that the matter is the same or substantially the same as that which the departed lawyer previously provided counsel for *and* that a lawyer remaining in the firm has confidential information about the former client that is material to the matter. *See* Illinois Rule of Professional Conduct 1.10(b)(1) and (2). The exceptions to the Rule found in subsections (1) and (2) codify the principle of "imputed disqualification," whereby an entire firm is disqualified from representing a new client

against a former client because the former client's confidences are imputed onto the other members of the firm, and therefore violate the firm's professional responsibilities to former clients as well as breach the attorney-client privilege. Comment 5 to the Illinois Rules of Professional Conduct further explains:

> Rule 1.10(b) operates to permit a law firm, under certain circumstances to represent a person with interests directly adverse to those of a client represented by a lawyer who formerly was associated with the firm. The Rule applies regardless of when the formerly associated lawyer represented the client. However, the law firm may not represent a person with interests adverse to those of a present client of the firm, which would violate Rule 1.7. Moreover, the firm may not represent the person where the matter is the same or substantially related to that in which the formerly associated lawyer represented the client and any other lawyer currently in the firm has material information protected by Rule 1.6 and 1.9(c).

The burden of establishing facts warranting disqualification is on the moving party. *See, e.g., Van Jackson v. Check 'N Go of Illinois, Inc.*, 114 F. Supp. 2d 731, 732 (N.D. Ill. 2000) (citing *Weeks v. Samsung Heavy Industries Co.*, 909 F. Supp. 582, 583 (N.D. Ill. 1996); *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 739-740 (2d Cir. 1978)). There is a great paucity of caselaw concerning the disqualification of law firms where an individual attorney who represented a former client terminates his relationship with the firm and the firm is then retained by a party with adverse interests to the former client. The District Court for the Northern District of Indiana, in interpreting Rule 1.10(b), held that when an attorney is no longer loyal to a former client and leaves his law firm, the firm may

represent a party adverse to the former client. *See Exterior Systems, Inc. v. Noble Composites, Inc.*, 210 F. Supp. 2d 1062, 1072-1073 (N.D. Ind. 2002). The court noted that the case presented a good example of why Rule 1.10(b) concerns itself only with client confidences, and stated that a contrary holding would take the duty of loyalty to the extreme and would result in a system in which all partners and most associates would be precluded from ever switching firms for fear of conflicts. *See Id*. In *Richards v. Southern Pacific Transp. Co.*, 735 F. Supp. 206, 208 (E.D. La. 1990), the District Court, construing a substantially identical provision of the Louisiana Rules of Professional Conduct, held that when an attorney departs from a firm, the firm is not disqualified from representing a client adverse to a former client when no one at the firm has any information protected by Rules 1.6 and 1.9(b). In *Goldberg v. Warner/Chappell Music, Inc.*, 125 Cal.App.4th 752, 765 (Cal. App. Ct. 2005), a case decided under California law, the California Court of Appeals in affirming the trial court's denial of a motion to disqualify an attorney looked to Rule 1.10(b) as a further basis to uphold the trial court's decision. The court there stated that "where an attorney who presumptively acquired confidential information from a former client leaves the firm, the firm is not automatically disqualified if it chooses to represent a party adverse to the former client." *Id.* These cases are all in line with the way the Magistrate Judge interpreted Rule 1.10(b) in this case .

Hennessy argues that the Magistrate Judge ignored the fact that on January 15, 2012,

Dykema sent an e-mail to him asking if he wished to "remain" with Dykema or follow Reibman to another firm. Hennessy argues that by using the term "remain" Dykema was affirmatively taking the position that it still represented him as of that day. Hennessy's argument that the Magistrate Judge failed to consider this fact is controverted by the record. The Magistrate Judge considered the e-mail from Dykema to Hennessy in determining when the relationship between the two terminated.

This Court cannot conclude that the Magistrate Judge's order was clearly erroneous or contrary to law. As the cases discussed above demonstrate, Rule 1.10(b) allows a firm to represent a client adverse to a former client when the attorney representing the former client terminates his relationship with the firm unless the subject matter of the suit is substantially the same and another lawyer at the firm is aware of confidential information about the former client that is material to the matter. Here, the Magistrate Judge concluded that on the record before her the moving party had not met his burden of proof to establish that another lawyer at Dykema possesses confidential information about Hennessy that is material to the instant law suit. After reviewing the record, this Court finds that the Magistrate Judge's conclusion is not clearly erroneous. Furthermore, Hennessy has not demonstrated on appeal that the Magistrate Judge's finding was clearly erroneous or contrary to law, as he has introduced no evidence to support the position that any lawyer at Dykema is aware of confidential information about him that is material to this suit.

**IV. Conclusion**

For the foregoing reasons, the Court concludes that the Magistrate Judge's Order was not clearly erroneous or contrary to law. Therefore, Hennessy's objections to the Magistrate Judge's Order of June 13, 2012 are overruled. The Dykema law firm is not disqualified from representing Fish in this matter.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: **August 22, 2012**